IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL OGIN,<br><br>  Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>  Defendant. | No. C 11-5077 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Michael Ogin brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue, denying Ogin's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 21, 23. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the administrative record, and relevant legal authority, the Court hereby DENIES Ogin's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Ogin was born on January 28, 1959. Administrative Record ("AR") 196. He received his GED in 1982 and has worked in the construction industry. AR 39-40. The record indicates that

Ogin suffered knee, lower leg, neck, and back injuries as a result of his construction work. AR 45. The record also indicates that Ogin suffered a physical assault on or about July 2008, when he states he was attacked and kicked with steel-toe boots and hit with a hammer. AR 318, 408-09, 413-15.

Ogin filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act on July 23, 2008, alleging disability since December 1, 2000. AR 196-204. The application was denied initially on January 30, 2009, (AR 70-87), and upon reconsideration on April 24, 2009 (AR 106-16). Ogin thereafter filed a written request for a hearing on May 6, 2009. AR 152.

Administrative Law Judge ("ALJ") Sharon L. Madsen conducted a hearing on September 8, 2010. AR 32-69. Ogin appeared with his attorney, Geoffrey Hayden, and the ALJ heard testimony from Ogin and Vocational Expert Thomas Dachelet. AR 34. The ALJ subsequently issued an unfavorable decision finding that Ogin was not disabled. AR 13-31. In her decision dated September 20, 2010, the ALJ found that Ogin had the following severe impairments: "lumbar degenerative disc disease; cervical degenerative disc disease; right shoulder rotator cuff strain; carpal tunnel syndrome . . .; anxiety disorder; mood disorder; and paranoid personality disorder." AR 18. The ALJ held that Ogin's impairments did not meet one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, and that he retained the residual functional capacity ("RFC") "to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk 6 hours in an 8-hour workday," that his impairments limited him "to occasional stooping, crouching, crawling, climbing and overhead reaching with his right upper extremity," and that he could "perform simple, routine tasks with occasional public contact." AR 19-20.

The ALJ held that Ogin was unable to perform any past relevant work, but that given his age, education, work experience, and RFC, there are a significant number of jobs in the national economy he could perform. AR 24. Finally, the ALJ concluded that Ogin was not disabled at any time from December 1, 2000 through the date of decision. AR 25. This decision became final when the Appeals Council declined review. AR 5-7.

Having exhausted his administrative remedies, Ogin commenced this action for judicial

1 review pursuant to 42 U.S.C. § 405(g). On May 31, 2012, Ogin brought the instant motion for
2 summary judgment. Dkt. No. 21. On June 26, 2012, the Commissioner filed a cross-motion for
3 summary judgment. Dkt. No. 23.

4 The Court shall address additional facts as necessary in the remainder of this Order.

## LEGAL STANDARDS

**A.  Standard of Review**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, of evidence which a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court must consider the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.* at 750. Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

**B.  Standard for Establishing a Prima Facie Case for Disability**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). In determining whether a claimant is disabled, the ALJ must apply a five-step sequential evaluation process. 20 C.F.R. § 404.1520. During the first four steps of this sequence, the claimant bears the burden of proof to demonstrate disability, but the burden shifts to the Commissioner at step five "to show that the claimant can do other kinds of work." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)

(quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988)).

First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). Second, the claimant must have a severe impairment. *Id.* § 404.1520(c). Third, if the claimant's impairment meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant will be found disabled without consideration of age, education, or work experience. *Id.* § 404.1520(d). Fourth, if the claimant fails to satisfy step three, the ALJ will assess and make a finding on the claimant's RFC. *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, the claimant will not be found disabled; if not, the ALJ proceeds to step five. *Id.* § 404.1520(f). Fifth, if the claimant is able to adjust to other work in the national economy, the claimant will not be found disabled. *Id.* § 404.1520(g)(1).

## ANALYSIS

In his motion, Ogin raises three arguments in support of his position that he is entitled to benefits. First, Ogin argues that the ALJ failed to properly assess his mental impairment. Second, he argues that the ALJ failed to discuss whether he was presumptively disabled under Section 12.05C of the Listing of Impairments, 20 C.F.R. part 404, subpart P, appendix 1, listing 12.05 ("listing 12.05C"). Third, he argues that the ALJ failed to properly evaluate multiple third party statements.

**A.     Mental Impairment**

In her decision, the ALJ found that Ogin has severe impairments of an anxiety disorder, mood disorder, and paranoid personality disorder limiting him to simple routine tasks with occasional public contact. AR 18, 20. Despite this, the ALJ held that Ogin's impairments did not meet one of the listed impairments and that he retained the RFC to "perform simple, routine tasks with occasional public contact." AR 19-20. Ogin argues that the degree of impairment found by the ALJ is not supported by any examining psychiatrist's or psychologist's opinion. Pl.'s Mot. at 4-9. In support of his argument, Ogin cites to the opinions of psychologists Carolyn Krall-Catron,

Ph.D., and Kimball Hawkins, Ph.D. *Id.*

In response, the Commissioner argues that the ALJ properly preferred the opinion of State agency physicians over those of examining psychologists that were internally inconsistent and unsupported by the treating records. Def.'s Mot. at 3.

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, there is no dispute that Dr. Hawkins is an examining psychologist. Pl.'s Mot. at 4-5; Def.'s Mot. at 3. As to Dr. Catron, Ogin refers to her in his motion an examining psychologist, but refers to her in his reply as a treating physician. Pl.'s Mot. at 4; Reply at 4. Regardless, for both examining and treating physicians, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of the physician. *Lester*, 81 F.3d at 830-31 (citations omitted). If contradicted by another doctor, the ALJ can only reject a physician's opinion for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Id.* at 830-31 (citations omitted).

1. <u>Dr. Catron</u>

Dr. Catron completed psychological assessments in 2009 and 2010. AR 473-83, 544-48. On April 6, 2009, Dr. Catron completed two checklist forms - a Short-Form Evaluation for Mental Disorders, (AR 474-77), and a Mental Assessment form, (AR 478-81). In the mental disorders evaluation, Dr. Catron found that Ogin had "moderately impaired concentration, moderately impaired recent and remote memory, anxious and depressed mood, expansive affect, auditory hallucinations, blocking tangential and loose thought processes, grandiose ideas, phobias, and moderate to severe impairment of judgment." AR 474-76. Dr. Catron also found that Ogin possessed a poor ability to complete a normal workday without interruptions from psychologically-based symptoms and a poor ability to respond appropriately to changes in a work setting. AR 477. However, she found that he had a fair ability to understand, remember, and carry out complex and simple instructions, a fair ability to maintain concentration, attention and persistence, and a fair

1 ability to perform activities within a schedule and maintain regular attendance. AR 477.

2 In the mental assessment form, Dr. Catron found that Ogin had a slightly limited ability to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation; a moderately limited ability to understand and remember very short and simple instructions, carry out very short and simple instructions, perform activities within a schedule and be punctual, make simple work related decisions, interact appropriately with the general public, ask simple questions or request assistance, maintain socially appropriate behavior, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others; and a markedly limited ability to remember locations and worklike procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination within a proximity to others without being distracted, complete a normal workday without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them. AR 478-81.

In a cover letter included with the assessments, Dr. Catron concluded that Ogin's clinical presentation included symptoms of Post-traumatic Stress Disorder, Chronic, and Schizophrenia, Disorganized Type. AR 473. She also noted that Ogin's residual symptoms "may cause difficulty or impairment in social, occupational, or other important areas of functioning and are, therefore, regarded as clinically significant." AR 473. She found that his prognosis could be "optimally predicted as fair." AR 473.

Dr. Catron also provided an updated assessment, dated August 25, 2010, in which she indicated that Ogin had a diminished capacity to interact with others and was continuing to take psychotropic medications. AR 544-48.

In her decision, the ALJ considered Dr. Catron's opinion, but she gave it no weight because no treatment records were provided. AR 22. The ALJ also found that Dr. Catron's report was internally inconsistent because the Mental Assessment form does not match the Evaluation for

1 Mental Disorders assessment. AR 22.

2 As stated above, to reject Dr. Catron's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830 (citations omitted). If contradicted by another doctor, the ALJ can only reject Dr. Catron's opinion for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Id.* at 830-31 (citations omitted). Here, the ALJ cited to contradictory evidence from the state agency consulting physicians. AR 22. On April 24, 2009, 18 days after Dr. Catron's assessment, R. Paxton, M.D., completed a Psychiatric Review Technique form, which utilizes a four-point scale to measure functional limitation: "None," "Mild," "Moderate," and "Marked." AR 497-507. Dr. Paxton found that Ogin had only mild restriction of activities of daily living, mild difficulties in maintaining social function, and mild difficulties in maintaining concentration, persistence, or pace. AR 505. On April 16, 2009, H. Pham, M.D., completed a Case Analysis, in which Dr. Pham noted that Ogin could perform simple tasks in a non-public setting and, based on his age, education, and experience, could perform work other than his past relevant work. AR 494-96. Thus, because the ALJ considered contradictory opinions, she need only provide specific and legitimate reasons for rejecting Dr. Catron's opinion.

As to the first reason, this Court finds that the ALJ properly afforded little weight to the opinion of Dr. Catron because it was not supported by specific medical findings or objective evidence. An ALJ need not accept a physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected physician's opinion that claimant could not perform sedentary work because it "was unsupported by rationale or treatment notes, and offered no objective medical findings"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004) (ALJ properly discounted physician's opinion which was in the form of a checklist and lacked substantive medical findings to support her conclusion). Here, the two medical statement forms were merely check-marked or circled answers, and Dr. Catron did not cite to any medical evidence to support her opinion therein.

Further, in addition to Dr. Paxton's and Dr. Pham's opinions discussed above, the Court notes that the other evidence of record also conflicts with Dr. Catron's findings. On March 10, 2009, one month prior to Dr. Catron's opinion, James Gutzman, PA-C, completed a psychiatric assessment in which he noted that Ogin's judgment and insight were intact, that his thought processes were within normal limits, that his mood was normal and affect appropriate, his associations were within normal limits, and he noted no hallucinations, no delusions, and no psychotic thoughts. AR 443. Similar findings were also made on October 31, November 13 and 26, and December 10, 2008, and February 9, 2009. AR 359, 378, 381, 386, 391, 455. Ogin takes issue with the fact that Mr. Gutzman is a physician's assistant, not an M.D. Pl.'s Reply at 5. However, while physician's assistants are not "acceptable medical source[s]," they are "other source[s]" that receive some consideration. 20 C.F.R. § 404.1513(a)(3), 20 C.F.R. § 416.913(d). At a minimum, these medical professionals' opinions should be treated with as much consideration as a lay witness. *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Lay witness testimony regarding a claimant's symptoms is "competent evidence" that must be taken into account, unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, there is no indication that the ALJ disregarded Mr. Gutzman's testimony; thus, the Court finds that it would be properly considered as part of the record.

The second reason provided by the ALJ, the internal inconsistencies between the assessments, also provides a specific and legitimate reason for rejecting Dr. Catron's opinion. Dr. Catron's assessments are based on similar four-point scales. The first scale describes a claimant's abilities as "unlimited," "good," "fair," or "poor," with the latter precluding the performance of the activity. AR 477. The second scale describes those abilities as "none," "slightly limited," "moderately limited," or "markedly limited," with the latter "seriously affect[ing] ability to function." AR 478, 544. Using these scales, Dr. Catron found the following limitations:

- "fair" versus "markedly limited "abilities to understand, remember, and carry out

|   |   |   |
|---|---|---|
| 1 |   | complex instructions (AR 21-22, 477-79); and |
| 2 | - | "fair" versus "markedly limited" abilities to maintain concentration, attention |
| 3 |   | and persistence (AR 21-22, 477, 479). |

Given that Dr. Catron found the same limitations to be "fair" and "markedly limited," the Court finds that it was proper for the ALJ to consider these findings inconsistent and to determine that the inconsistencies cast doubt on the reliability of Dr. Catron's assessments. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ did not err in rejecting various statements because they were internally inconsistent). Ogin argues that these are "insignificant inconsistencies" and should be disregarded. Pl.'s Reply at 5. However, it is not the Court's role to interpret the evidence; rather, where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750. All ambiguities are to be resolved by the ALJ. *Id*.

Based on this analysis, the Court finds that the ALJ properly rejected Dr. Catron's opinion for specific and legitimate reasons that are supported by substantial evidence in the record.

2.  <u>Dr. Hawkins</u>

On January 9, 2009, Kimball Hawkins, Ph.D., completed a psychological evaluation. AR 421-26. Dr. Hawkins noted that Ogin did not complete his mental status exam because he "tends to be distracted or to give up easily." AR 422. He opined that Ogin "did not appear to do his best." AR 422. Dr. Hawkins administered the Wechsler Adult Intelligence Scale-III ("WAIS") from which Ogin obtained a Verbal IQ of 69, a Performance IQ of 65, and a Full Scale IQ of 65, which was significantly sub-average. AR 424. Dr. Hawkins also noted that Ogin's Rey 15 Item Memory Test yielded three correct sets out of five possible, which is considered a borderline score, but is consistent with a hypothesis of not malingering. AR 424.

Dr. Hawkins diagnosed a cognitive disorder of unknown etiology, marijuana abuse, impulse control problems, mood disorder, and paranoid personality symptoms. AR 425. He reached the following conclusion:

> [Ogin's] ability to understand, remember, and carry out complex

> instructions is poor. His ability to understand, remember, and carry out simple instructions is marginal to poor. His ability to maintain concentration, attention, and persistence is poor. His ability to perform activities within a schedule and maintain regular attendance is unlikely. His ability to complete a normal work day and work week without interruptions from psychologically based symptoms is poor. His ability to respond appropriately to changes in the work setting is poor. His ability to manage his own money is marginal, although he demonstrated poor judgment today.

AR 425. Dr. Hawkins recommended that Ogin receive ongoing psychiatric treatment, medical follow up, and a visual evaluation. AR 426.

In her opinion, the ALJ gave little weight to Dr. Hawkins' opinion because it did not match the contemporary findings in the treating records, and because Ogin was not fully cooperating with Dr. Hawkins' examination. AR 22, 24.

As stated above, there is no dispute that Dr. Hawkins is an examining psychologist. Pl.'s Mot. at 4-5; Def.'s Mot. at 3. Thus, because his opinion is contradicted, the ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31 (citations omitted). Here, as to the ALJ's first reason, she cited to contradictory evidence from the state agency consulting physicians. AR 22. On April 24, 2009, 18 days after Dr. Catron's assessment, R. Paxton, M.D., completed Psychiatric Review Technique form, which utilizes a four-point scale to measure functional limitation: "None," "Mild," "Moderate," and "Marked." AR 497-507. Dr. Paxton found that Ogin had only mild restriction of activities of daily living, mild difficulties in maintaining social function, and mild difficulties in maintaining concentration, persistence, or pace. AR 505. On April 16, 2009, H. Pham, M.D., completed a Case Analysis, in which it is noted that Ogin could perform simple tasks in a non-public setting and, based on his age, education, and experience, could perform work other than his past relevant work. AR 494-96. In addition, as discussed above, Mr. Gutzman completed multiple psychiatric assessments and found that Ogin's judgment and insight were intact, that his thought processes were within normal limits, that his mood was normal and affect appropriate, his associations were within normal limits, and he noted no hallucinations, no delusions, and no psychotic thoughts. AR 359, 378, 382, 386, 391, 443, 455. Thus, because Dr. Hawkins' opinion did not match contemporary

findings in the treating records, the Court finds that this is a specific and legitimate reason supported by substantial evidence to reject Dr. Hawkins' opinion.

The second reason, that Ogin failed to cooperate during Dr. Hawkins' testing, is also legitimate. A plaintiff's failure to cooperate in testing may be held against him in the disability determination. *Thomas*, 278 F.3d at 959 (the plaintiff's failure to cooperate during medical evaluations supported the ALJ's credibility determination); *Tonapetyan*, 242 F.3d at 1148 (ALJ properly discredited plaintiff's testimony based in part on her lack of cooperation and "poor effort" during examinations); *Kaufmann v. Comm'r of Soc. Sec.*, 2011 WL 4353561, at *6 (E.D.Cal. Sep. 16, 2011) (ALJ properly considered plaintiff's cooperation in discounting examining physicians' opinions).

Based on this analysis, the Court finds that the ALJ properly rejected Dr. Hawkins' opinion for specific and legitimate reasons that are supported by substantial evidence in the record.

**B.     Listing 12.05C**

Ogin next argues that the ALJ failed to discuss and analyze his condition under listing 12.05C at step three of the analysis. Pl.'s Mot. at 9-10. Specifically, Ogin directs the Court's attention to Dr. Hawkins' January 9, 2009 psychological examination, during which his performance on the WAIS test indicated that Ogin possessed a verbal IQ of 69, a performance IQ of 65, and a full scale IQ of 65. AR 424. Ogin contends that the combination of his physical impairment and his WAIS score indicates the existence of a plausible theory to show that he satisfied the criteria for mental retardation under listing 12.05C. Pl.'s Mot. at 10. Although the ALJ assigned little weight to Dr. Hawkins opinion for lack of consistency with the record, (AR 22), Ogin argues that the ALJ "still possessed a duty to adequately discuss and analyze the evidence," and that "[t]he ALJ's failure to discuss and analyze the evidence under listing 12.05C constitutes legal error and warrants remand." Pl.'s Mot. at 10.

In response, the Commissioner argues that the ALJ did not have to specifically discuss whether Ogin was presumptively disabled under listing 12.05C absent sufficient evidence. Def.'s Mot. at 7. The Commissioner points out that no doctor opined that Ogin met listing 12.05C; in fact,

Dr. Hawkins stated that Ogin's "intellectual scores . . . underestimate . . . his actual abilities," and that Dr. Paxton ruled out presumptive disability under the listings. Def.'s Mot. at 7.

At step three in the sequential process, an ALJ must consider whether a claimant's conditions meet or equal any of the impairments outlined in 20 C. F. R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments describes impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1520(d). The claimant bears the burden of establishing a prima facie case of disability under the Listing of Impairments. *Thomas*, 278 F.3d at 955; 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when all of the medical criteria required of that listing is satisfied. 20 C.F.R. § 404.1525(c)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.") "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Id.* at 1099 (quoting 20 C.F.R. § 404.1526.) Medical equivalence should be based on medical findings and a "generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100.

Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. part 404, subpart P, appendix 1, listing 12.05. The listing provides four different ways for the claimant to prove mental retardation. Here, Ogin relies on subsection C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

"[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). In other words, this is the definition of a "severe" impairment. Thus, in this circuit, a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of listing 12.05C. *Id.*; *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984); *Nieves v. Secretary of Health & Human Servs.*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985)). Indeed, in the *Fanning* decision, the court found that the "extra" impairment need not even reach the "severe" limit; although one might be hard pressed to call a less than "severe" impairment, an impairment at all. *Fanning*, 827 F.2d at 633.

In *Fanning*, the first prong of the listing was met because plaintiff's IQ was found to be between 60 and 69. *Id.* The court imposed a standard applicable to the second prong, that the impairment must have more than a slight or minimal effect on the claimant's ability to perform basic work activities. *Id.* Because the ALJ had not considered this question in regard to the claimant's knee injury, the court remanded the matter. *Id.*

In the instant case, the ALJ found that Ogin's severe impairments included lumbar degenerative disc disease, cervical degenerative disc disease, right shoulder rotator cuff strain, carpal tunnel syndrome, anxiety disorder, mood disorder, and paranoid personality disorder. AR 18. Thus, because Ogin's WAIS results indicate that Ogin possessed a verbal IQ of 69, a performance IQ of 65, and a full scale IQ of 65, placing him within listing 12.05C's limitations of 60 through 70, subsection C appears to be met. However, because Dr. Hawkins noted that there was a question of whether Ogin put forth his best effort, the ALJ did not consider these results valid. AR 24, 422, 425. In an unpublished decision, the Ninth Circuit has stated that it "do[es] not doubt" that an ALJ can decide that an IQ score is invalid, but also noted that it has "never decided what information is appropriately looked to in deciding validity of an IQ score." *Thresher v. Astrue*, 283 Fed. App'x 473, 475 (9th Cir. 2008). In *Thresher*, the court recognized other decisions have emphasized that a score can be questioned on the basis of "other evidence," and that other courts require "some

Page 13 of 17

1 empirical link between the evidence and the score." *Id.* at 495 n. 6 (citations omitted).

2 Consequently, some circuits have allowed the ALJ to use several factors in assessing the validity of

3 test results. *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) (holding that the ALJ is free to

4 disregard a low IQ score where the evidence showed substantial malingering and daily activities

5 inconsistent with the level of impairment alleged); *Soto v. Sec'y*, 795 F.2d 219, 222 (1st Cir. 1986)

6 (holding that the ALJ need not accept the IQ score if there is a substantial basis for believing that

7 plaintiff is feigning results). Other circuits have allowed an ALJ to discredit a test result when

8 inconsistencies between tests indicated a high possibility of malingering. *Burchfield v. Astrue*, 2011

9 WL 5975764, at *4 (D.Ariz. Nov. 30, 2011) (evidence that claimant did not make a serious effort in

10 testing may properly be considered when determining validity of an IQ score); *Popp v. Heckler*, 779

11 F.2d 1497, 1499–1500 (11th Cir. 1986).

12 Here, the ALJ looked to Dr. Hawkins' findings, in which he noted that Ogin's "intellectual

13 scores are believed to be an underestimate of his actual abilities." AR 24, 425. The ALJ noted that

14 Ogin had received some mental health counseling, but no treatment notes were provided, merely

15 assessments. AR 24. Further, although the ALJ found that Ogin's medically determinable

16 impairments could reasonably be expected to cause some of the alleged symptoms, she found that

17 his "statements concerning the intensity, persistence and limiting effects of these symptoms are not

18 credible to the extent they are inconsistent with the [RFC] assessment." AR 23. Determinations of

19 credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved

20 by the ALJ. *Magallanes*, 881 F.2d at 750. Thus, although the ALJ did not specifically discuss

21 listing 12.05C, she properly considered and ruled out the possibility that his mental impairments

22 were severe enough to make him presumptively disabled. *Gonzalez v. Sullivan*, 914 F.2d 1197,

23 1200-01 (9th Cir. 1990) (ALJ need not "state why a claimant failed to satisfy every different section

24 of the listing of impairments."). And, even if the evidence is susceptible to more than one rational

25 interpretation, the Court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750.

26 Based on this analysis, the Court finds that reversal and remand are not warranted for

27 consideration of listing 12.05C.

**C.     Third Party Statements**

Finally, Ogin argues that third party statements indicate greater limitations than found by the ALJ. Pl.'s Mot. at 10. Ogin cites to the testimony of his aunt, Carolyn Katra, who completed a Third Party Function Report in October 2008. AR 271-78. In the report, Ms. Katra states that Ogin is incapable of performing any type of work. AR 278. She also states that he loses concentration, is restless and paranoid (AR 275); that he does not do any household chores or yard work (AR 273); and that he repeats things and is argumentative, does not finish things, does not handle stress well, and gets agitated (AR 276-77). Ogin argues that these statements indicate greater limitation than that found by the ALJ. Pl.'s Mot. at 11.

In response, the Commissioner argues that the ALJ properly considered third-party statements, but gave them weight only to the extent that they were consistent with other evidence. Def.'s Mot. at 7.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, *Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4). Such testimony may not be disregarded without comment, and if an ALJ would like to do so, "'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Competent lay testimony may come in the form of "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Nguyen*, 100 F.3d at 1467 (explaining that lay persons are not competent to make medical diagnoses, but can competently testify as to a claimant's symptoms or how an impairment affects a claimant's ability to work).

Here, the ALJ specifically considered Ms. Katra's statement in her decision, noting that Ms. Katra testified that Ogin did not do any household chores or yard work, that he was able to take care of his personal needs, and that he did not like being around other people. AR 23. She "g[a]ve her statement some weight, as it is consistent with other evidence." AR 23. The ALJ limited Ogin to occasional public contact. AR 23, 275. This is consistent with Ms. Katra's statements that Ogin is "unable to be around crowds," but that he goes shopping on his own "as often as needed." AR 274-75. Ogin argues that the ALJ "did not give her statement credit as it also indicates a much more depraved state." Pl.'s Mot. at 12. However, Ms. Katra's report does not support this argument. Instead, Ms. Katra states that Ogin is able to live alone and has no problems with personal care, reads daily, drives and rides a bike, goes shopping as often as is needed, and is able to follow moderate spoken instructions. AR 271-78. Even if the Court were to find that Ms. Katra's testimony is susceptible to more than one rational interpretation, it must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750.

Further, to the extent that Ms. Katra's testimony indicated any limitations not specifically discussed by the ALJ, such limitations are accounted for elsewhere in her decision. AR 21-23. Thus, even if the Court were to find that Ms. Katra's report indicated a "depraved state," the ALJ's failure to address this testimony is harmless error. *Moore v. Astrue*, 2011 WL 1792851, at *7 (C.D. Cal. May 11, 2011) (ALJ's failure to address lay testimony regarding limitations already accounted for in his decision is harmless error when the plaintiff failed to demonstrate how this would have changed the RFC). Ogin argues that Ms. Katra's statement is consistent with the opinions of Dr. Hawkins and Dr. Catron. As discussed above, the ALJ considered the opinions of both doctors, and any alleged error is therefore harmless. *Zerba v. Comm'r of Soc. Sec. Admin.*, 279 F. App'x 438, 440 (9th Cir. 2008) (If the third party testimony does not introduce new evidence and is merely duplicative, the ALJ does not err by failing to evaluate the testimony).

Based on this analysis, the Court finds that reversal and remand are not warranted for further consideration of Ms. Katra's testimony.

## CONCLUSION

Based on the foregoing analysis, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 6, 2012

MARIA-ELENA JAMES
United States Magistrate Judge